## FAIRBANKS, MORSE & CO. v. LAKE UNION DRY DOCK & MACHINE WORKS.

Circuit Court of Appeals, Ninth Circuit. March 11, 1929.

No. 5634.

Cosgrove & Terhune, of Seattle, Wash., for appellant.

Ira Bronson, H. B. Jones, and Robert E. Bronson, all of Seattle, Wash., for appellee.

Before RUDKIN and DIETRICH, Circuit Judges, and BEAN, District Judge.

RUDKIN, Circuit Judge. This was an action by Lake Union Dry Dock & Machine Works against Fairbanks, Morse & Co., on a trade acceptance executed by the latter through C. R. Miller, as agent. The authority of Miller to execute the trade acceptance on behalf of Fairbanks, Morse & Co. was the only question at issue in the court below. The court, sitting without a jury, determined that issue in favor of the plaintiff, and gave judgment accordingly. The defendant has appealed therefrom.

Without going into unnecessary detail, the facts are substantially as follows. At the beginning of 1927 the Sterling Steamship Company was indebted to the appellee in the sum of $8,000, with accrued interest, for re-

pairs on the Ethel M. Sterling, a vessel owned by the Sterling Company. This balance became due on March 1, 1927, and in the latter part of May, 1927, a demand for payment was made on Walter R. Kuppler, treasurer of the Sterling Company, and also credit man for the appellant. The vessel at that time was on a voyage to Honolulu through the Panama Canal, and the appellee notified Kuppler that, unless the claim was paid, the vessel would be libeled at Galveston, Tex., where she was expected to arrive in a few days. The matter was then taken up with Miller, local manager of the appellant at Seattle, and Miller requested, and was granted, a couple of days delay to enable him to confer with the appellant. Miller then sent a telegram to A. W. Thompson, Pacific Coast manager for the appellant, at Los Angeles, stating, in substance, that the appellee had a claim of something over $8,000 against the vessel which must be paid before June 20; that the vessel was then at Galveston, loading for Honolulu; that the appellee threatened to libel the vessel on June 2, unless the appellant would agree to pay its claim on or before June 20; that the appellant stood to lose heavily if the libel was filed, and suggested that the appellant assume the indebtedness of the appellee and take an assignment of its claim, thus permitting the vessel to proceed on her voyage. In answer to this telegram, Thompson inquired whether a mortgage held by the appellant was not preferred over the claim of the appellee. To this Miller replied that the claim of the appellee represented the unpaid balance of a bill for repairs contracted prior to the execution of the mortgage, and that the attorneys for the appellant had advised that the claim was superior to the mortgage. To this telegram Thompson replied as follows: "Referring to Sterling Steamship Corporation, with your knowledge of existing conditions and contact with competent legal advice matter must be left to your good judgment. Bear in mind that we are loath to increase our investment, but must not under any circumstances jeopardize the sum now involved. Exhaust every effort to minimize our investment. Have you considered executing non interest bearing guarantee of payment at four to six months as preference to immediate cash outlay."

After further conferences between the parties upon receipt of this telegram, and under the advice of counsel representing the appellant, the assumption of the indebtedness of the appellee by the appellant was put in the form of a trade acceptance, at the suggestion of the bank through which the trade acceptance was discounted. About a week later, Kuppler made a report to the home office in Chicago fully informing the appellant of the execution of the trade acceptance and of the reasons and necessity therefor. About three weeks after receipt of this report, representatives of the appellant came to Seattle, and appellee was then notified for the first time that Miller was without authority to execute the trade acceptance. As soon as the vessel arrived at Honolulu, she was libeled by the appellant and sold to satisfy its mortgage. The appellant contends that Miller was a local manager at Seattle, with authority to make contracts or sales in certain territory, where the amounts involved did not exceed $5,000, and to make collections therefor, but was without authority to execute negotiable instruments in behalf of his principal. While the making of sales and collections was no doubt his principal duty, the record shows plainly that he represented the appellant in other matters, such as in making advances in considerable sums from time to time to defray the expenses of the mortgaged vessel on her voyage, in effecting insurance, in looking after charters, and in many other ways. The authority of Thompson is not much discussed in the record, but he was the Pacific Coast manager of the appellant, in charge of all its extensive business west of Salt Lake City, and his authority to protect his employer by taking over or assuming lien claims superior to a mortgage held by his principal would seem to be beyond question. Indeed, the local manager at Seattle had done this on a number of previous occasions where lesser amounts were involved, and had likewise made advances to defray the expenses of the voyage of the mortgaged vessel in amounts exceeding the amount in controversy in order to protect the mortgage lien.

Objection seems to be made, however, to the form of the obligation executed by Miller rather than to his right or authority to assume or take over the lien claim of the appellee at all. But this is not a case where an agent has attempted to borrow money and execute a negotiable instrument for its payment in the name of his principal. It is a case where the agent did what he had a right to do, and simply executed a trade acceptance in lieu of assuming or taking over an obligation in some other way. The discretion conferred on him in an emergency by his superior was very broad. He was under obligation to act promptly, if he acted at all, to save his principal the expense and inconvenience that would necessarily result from a

seizure of the vessel, and, inasmuch as he did not pay cash, the form in which the obligation would be secured or assumed was dictated in a measure by the appellee. In other words, the choice was not entirely his, and, in view of all the circumstances, and the belated disavowal of authority, we have little hesitation in saying that the findings of the court below are amply supported by the testimony.

The judgment is affirmed.